**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DENNIS FONTENOT on Behalf of Himself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:15-cv-02113** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **SAYBOLT LP and CORE LABORATORIES LP,** | § § § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiff Dennis Fontenot, on behalf of himself and on behalf of all others similarly situated, files this Joint Motion for Approval of Settlement and would respectfully show the Court the following:

### I.    INTRODUCTION

Plaintiff Fontenot and Defendants have reached a settlement of the pending dispute concerning wage and hour claims under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides 41 current and former schedulers who were paid a fixed annual salary a monetary award for possible unpaid overtime wages.

Plaintiff Fontenot filed this lawsuit as a FLSA collective action on July 22, 2015. The central allegation in Plaintiff's complaint was the non-payment of overtime arising from Defendants' classification of Plaintiff and other similarly situated schedulers (collectively, the "Class Members") as exempt from the FLSA's overtime provisions. As a result of such classification, Defendants paid Plaintiff and the other schedulers a fixed annual salary for all hours worked without any additional premium pay for overtime.

1

During preliminary discovery, Defendants provided Plaintiff's counsel with pay records for the 41 current and former schedulers employed by Defendants during the relevant time period covered by this lawsuit. Using these records, the Parties calculated damages they believed could be available to this class of employees.

From April 2016 to August 2016, the Parties exchanged written correspondence and engaged in multiple face-to-face meetings regarding Plaintiff's theory of the case and the various defenses available to Defendants. The Parties also discussed the number of hours worked by the Class Members and the estimates of possible damages should Plaintiff prevail on his claims. The Parties ultimately reached an agreement to resolve this case. Now the Parties request that the Court approve this settlement, the terms of which are reflected in the attached Exhibit "1."

## II.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.*, citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit).

2

Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case.

**A.   The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Class Members. Pursuant to the Parties' agreement, overtime wages were calculated based upon an estimate of 6 hours of overtime worked on average per week by the Plaintiff and each Class Member over a three-year period. The annual salaries of the Plaintiff and Class Members were divided by 52 weeks and further divided by 46 estimated hours worked per week to determine the regular rate of pay. The regular rate of pay was then multiplied by a half-time premium to determine the overtime rate of pay. That rate was multiplied by 6 to determine the amount of estimated overtime wages earned per week by the Plaintiff and Class Members.

The settlement provides a payment to every eligible participant in the collective action. The settlement also includes liquidated damages in an amount equal to alleged back pay, thereby effectively doubling the total recovery for the Plaintiff and Class Members, based on a three year limitations period. As a result, Plaintiff and each Class Member will be entitled to a monetary recovery from this settlement that provides a gross recovery equivalent to approximately twice what the Parties calculate they may be owed on a three year limitations period.

The Parties had significantly different positions in this matter regarding exempt status, the method of calculating potential damages owed, whether liquidated damages were appropriate, and the applicable statute of limitations. Additionally, the Parties disagreed as to whether the fluctuating workweek method of calculating overtime could be applied retroactively. The Parties also had significant disagreement over the actual number of overtime hours worked by the Class Members.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Class Members. In particular, with the award of liquidated damages, the Settlement Agreement allows the Plaintiff and Class Members to recover an amount equal to twice their alleged unpaid wages.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Class Members will agree to release Defendants from any and all claims they may have related to wages, back pay and overtime.

**B.      The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Class Members because it provides for a settlement based upon the salaries that the Plaintiff and Class Members were paid with a reasonable estimate of the number of overtime hours worked. The estimate of overtime hours worked by each Class Member was based on interviews with Plaintiff and several Class Members as well as digital records establishing hours worked, including computer access logs, electronic mail archives and phone and SMS text records produced by Defendants. Based on these various data sets, the Parties agreed the Class Members were worked an average 6 hours of overtime per week during the relevant statutory period.

The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total amount available to all Class Members in the aggregate, net of attorneys' fees and costs. That is, hypothetically, if a Class Member is owed $2,000 and the total settlement amount is $100,000, his proportionate share of the settlement is two percent (2%) and he will receive that percentage of the settlement proceeds after attorney fees and costs have been deducted. The pro rata allocation to each Class Member is set forth on Exhibit B to the Settlement Agreement.

As part of the settlement, the Parties agreed to a Class Representative Award for Dennis Fontenot. Also known as a "service payment" or "incentive award," this amount is in addition to his pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Class Members, the valuable contributions Mr. Fontenot made throughout the litigation, particularly in its initial phases, and the significant risk to his reputation and future employment, Plaintiff submits that the incentive award is reasonable.

5

### C. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.

The Parties have agreed to self-administer this settlement. Within fourteen days after Court approval, Plaintiff's counsel will deliver settlement checks and a Notice Form (Exhibit 1-B) describing this lawsuit to each Class Member who opted-in to the lawsuit, and Defendants' counsel will deliver settlement checks and a Notice Form (Exhibit 1-B) describing this lawsuit to each remaining eligible Class Member currently employed Defendants who did not opt into the case.

Individuals who did not file a consent to join the lawsuit and who elect to participate in the settlement may do so by tendering their settlement checks as described in the Notice Form. This approach is consistent with settlements that are reached prior to the FLSA notice being issued. For example, in *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), the court approved final settlement of a FLSA wage action with a similar process for releasing FLSA claims through check cashing:

> Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case. . . . If Class Members do not cash their Settlement Award check, they will not be an FLSA Plaintiff and will not release any claims they may have under the FLSA.

*Id.* at *3. Likewise in, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012), the court approved a settlement of a hybrid class and collective claim where class members opted in and released FSLA claims by endorsing settlement checks with the following language on the backside: "By endorsing this check, I consent to join the Class in Franco, et. al. v. Ruiz Food Products, Inc., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Id.* The agreement further provided that, "Class Members must only cash one Settlement Award check to opt-in to the Class."

6

*Id.* Lastly, the court made it clear it was approving a settlement agreement that provided, "waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above." *Id.* at *25. Other courts likewise have approved this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) ("By endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) ("[T]he FLSA class members are defined as delivery workers employed by the defendants between April 16, 2010, and August 21, 2013, and who endorse their settlement checks or have filed a consent to join the lawsuit."); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks."). The settlement agreement provides the same mechanism and release procedure. Release language in the form attached as Exhibit 1-C will be printed on the checks going to each such group.

    **D.    The attorneys' fees sought are fair and reasonable.**

Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiff's counsel investigated the claims, analyzed the pay data, managed communication with all Class Members, and performed other work.

Under Plaintiff's theory of the case, Plaintiff's counsel has more than successfully prevailed. It has acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of Plaintiff's claims and Defendants' possible defenses. Under Defendants' theory, the Plaintiff would be owed zero.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiff's counsel provided a significant benefit to the Class Members.

Ultimately, the attorneys' fees requested by Plaintiff's counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, the Class Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

E.   **The settlement should be approved by the Court.**

The terms of the settlement have been approved by Plaintiff, his counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length. The Parties entered into the

Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc*., 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members. Each Class Member will receive back wages and liquidated damages under federal law without the risk or expense of trial. Further, each Class Member will be able to recover a specified amount calculated based upon his or her employment with Defendants during the relevant time period covered by this lawsuit. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.     CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiff requests that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

RESPECTFULLY SUBMITTED,

KENNEDY HODGES, LLP

/s/ Don J. Foty
Don J. Foty
State Bar No. 24050022
John Neuman
State Bar No. 24083560
711 W. Alabama Street
Houston, Texas 77006
Phone:  713-523-0001
Fax:  713-523-1116
dfoty@kennedyhodges.com
jneuman@kennedyhodges.com

ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I certify that on November 11, 2016 I filed this document with the Southern District of Texas CM/ECF System which will serve a copy to counsel for Defendant via electronic mail.

/s/ Don J. Foty
Don J. Foty

## **CERTIFICATE OF CONFERENCE**

      I certify that I have conferred with counsel for Defendant. Defendant joins in the relief sought but does not necessarily agree with each of the statements of fact and law as stated herein.

                                    /s/ Don J. Foty
                                    Don J. Foty